JOHN B. EXUM, JR., ADMINISTRATOR OF THE ESTATE OF HERMAN JOSEPH McDONALD v. WILLIAM FRANKLIN BOYLES, SR.

(Filed 2 February, 1968.)

1. Automobiles § 8—

   A motorist upon the highway owes a duty to all other persons using the highway, including its shoulders, to maintain a lookout in the direction in which he is traveling.

2. Negligence § 10—

   Where a defendant under a duty to maintain a proper lookout could have discovered the plaintiff's helpless peril in time to avoid injuring him by the exercise of due care, defendant is liable under the doctrine of last clear chance if he fails to take such action to avoid the injury.

3. Same—

   The statement in former decisions to the effect that the "original negligence" of a defendant cannot serve as a basis for recovery under the last clear chance doctrine since this negligence is barred by the plaintiff's contributory negligence is expressly disapproved by the Supreme Court.

4. Automobiles § 10—

   Evidence that intestate undertook to change the left rear tire of his automobile while it was parked on the right shoulder of a highway some 10 inches from the pavement, that his body projected over the edge of the pavement as he worked on the tire, and that defendant, traveling in intestate's lane of traffic, observed intestate's disabled vehicle with its taillights on, but that defendant did not put his lights on high beam, nor steer toward the center line, nor reduce his speed, *is held* sufficient to take the case to the jury on the issue of last clear chance, and the granting of nonsuit was error.

5. Negligence § 10—

   The last clear chance doctrine must be pleaded by the plaintiff in order to be available as a basis for recovery, and the burden of proof on this issue is on him.

6. Judgments § 33—

   An entry of a judgment of voluntary nonsuit is not *res judicata* in a subsequent action on the same cause of action.

**7. Limitation of Actions § 12;   Death § 4—**
> An action for wrongful death instituted within one year after entry of a judgment of voluntary nonsuit in a former action and nearly five years after the accident and death of the intestate is not barred by the statute of limitations when plaintiff does not allege a cause of action different from the former action.

**8. Pleadings § 2—**
> A cause of action consists of the facts alleged in the complaint.

**9. Limitation of Actions § 12;   Pleadings § 25—**
> Where the complaint alleged negligence by defendant and that it was a proximate cause of intestate's death, an amendment which alleges facts raising the last clear chance doctrine does not amount to a statement of a new cause of action, and therefore the action is not barred when the complaint is filed within the time limited, even though the amendment is filed thereafter.

**10. Negligence § 10—**
> A plaintiff ordinarily pleads the doctrine of last clear chance in reply to the answer alleging contributory negligence.

**11. Pleadings § 2—**
> Plaintiff is not required in his complaint to anticipate a defense and undertake to avoid it.

**12. Automobiles § 10—**
> In an action for wrongful death arising out of an automobile accident, an instruction that plaintiff's intestate would be guilty of contributory negligence if the jury should find that he failed to set out flares or lanterns to the front and rear of his disabled automobile *held* error, since the provisions of G.S. 20-161 requiring such warning devices apply only to disabled trucks or trailers.

PARKER, C.J. and HIGGINS, J., concur in result.

APPEAL by plaintiff from *Cowper, J.,* at the January 1967 Civil Session of NASH.

This is an action for wrongful death of Herman McDonald and for his pain and suffering. At the conclusion of the plaintiff's evidence the motion of the defendant for judgment of nonsuit as to the action for pain and suffering was allowed and from this ruling the plaintiff does not appeal.

The complaint alleges that while McDonald was in the act of changing a tire on his station wagon, which was stopped upon the shoulder of U.S. Highway 301, Bypass, near Rocky Mount, the defendant operated his automobile in a negligent manner so that it struck McDonald and inflicted injuries which caused his death. Among the specifications of negligence alleged in the complaint are failure to keep a proper lookout, driving at a speed greater than was

reasonable under the circumstances, and failure to sound the horn, apply brakes, turn to the left or otherwise take steps to avoid striking McDonald when the defendant knew, or in the exercise of reasonable care should have known, that he was trapped and helpless and would be struck unless the defendant took action to avoid striking him.

The answer .denies any negligence by the defendant and pleads contributory negligence by McDonald in that he stopped his vehicle so near to the pavement that his body protruded over the pavement while he was engaged in changing the tire. The answer also pleads in bar the entry in a former action of a judgment of voluntary nonsuit and the running of the Statute of Limitations.

The plaintiff filed a reply alleging that, notwithstanding any contributory negligence of his intestate, the defendant had the last clear chance to avoid the accident.

The trial judge refused to submit to the jury the issue as to the last clear chance, which was tendered in due time by the plaintiff. The jury answered the issues of negligence and contributory negligence in the affirmative. From judgment entered in favor of the defendant upon this verdict, the plaintiff appeals.

It is alleged in the complaint that the accident occurred on 3 July 1960, shortly after 8 p.m., that it was then "almost dark," that the defendant's headlights were burning and that the defendant failed to see McDonald prior to striking him. The answer alleges that at the time of the accident, "it was dark," admits that the headlights were burning on the defendant's automobile and admits that the defendant did not see McDonald until "an instant before the impact," at which time it was too late to avoid striking him. The answer also admits that the defendant did not sound the horn. It is further alleged in the complaint and admitted in the answer that at the point of this accident the highway was straight and level for half a mile in each direction and visibility was unrestricted.

The plaintiff's evidence shows that McDonald died 3 July 1960, he instituted an action against the defendant for wrongful death 4 December 1961, and a judgment of voluntary nonsuit was entered therein 6 May 1964. The present action was instituted 25 March 1965, the plaintiff having paid the costs in the former action. It is stipulated that the plaintiff is the duly qualified and acting administrator of McDonald's estate.

As to the merits, the plaintiff's evidence is to the following effect:

McDonald, his wife and their four small children were traveling northward on U.S. Highway 301 upon the bypass around the city of Rocky Mount. The left rear tire of their station wagon became flat. It was then dusk and the headlights and taillights of the station

wagon were on. McDonald stopped the station wagon on the shoulder of the road upon a fill approaching a bridge over a creek. After observing the flat tire, he moved the station wagon so that it finally stopped with the left rear bumper ten inches off the pavement, the frame of the car extending a bit closer to the pavement. The pavement was 24 feet wide, divided into one northbound and one southbound lane. The shoulder was level and in good condition for approximately 12 feet from the pavement and then went down to swampy woodland bordering the creek. The station wagon was a few inches more than six feet in width.

McDonald jacked up the left rear wheel and changed the tire, having virtually completed the task at the time he was struck. It was then dark. The wheel was still jacked up and throughout the process, the headlights, taillights and the interior dome light of the station wagon were on. Its doors were shut. Mrs. McDonald and the children remained in the station wagon. McDonald was dressed in a white T-shirt and gray trousers. During the changing of the tire, a few other vehicles had passed in each direction.

The defendant's automobile was also northbound. The children in the station wagon observed his automobile approaching when it was approximately 300 feet away. His headlights were on. He was in the northbound lane of traffic. He struck the deceased with force sufficient to knock him 40 to 50 feet and to inflict injuries resulting in instant unconsciousness and in death shortly thereafter. The impact broke the right front headlight and damaged the right front fender of the defendant's car. The door of the station wagon was dented, apparently from being struck by McDonald's body. The vehicles did not come in contact. The defendant did not blow his horn or apply his brakes prior to the impact. His statement to the investigating patrolman at the scene of the accident was that he was driving 55 miles per hour and did not see the deceased prior to striking him. The speed limit at that point was 60 miles per hour.

The investigating patrolman did not find any flares, smudge pots, flashlights or other devices beside, or to the rear of, the station wagon. The occupants of the station wagon testified that McDonald had a flashlight in his hand. Immediately prior to the impact, he was squatting down, tightening the lug bolts, his knees bent and his back straight. At the time of the impact, a northbound truck was following the defendant and there was some southbound traffic approaching but at a considerable distance.

The adverse examination of the defendant, offered in evidence by the plaintiff, was to the following effect:

He was en route to his home following his evening meal at a

restaurant in Rocky Mount. He had had nothing intoxicating to drink. He first noticed the station wagon when he was approximately 200 yards from it. It was on the shoulder very close to the pavement. Its taillights were on. He did not see McDonald until he struck him. He did not apply his brakes and did not turn toward the marked center line of the highway away from the station wagon. At the time of the impact, he was driving between 50 and 55 miles per hour and he continued approximately 250 feet before bringing his automobile to a stop. He was looking straight ahead prior to the impact. He was not blinded by the lights of the vehicles approaching in the southbound lane.

The defendant testified in his own behalf to the following effect:

He was northbound and observed the taillights burning on the station wagon, which was parked "real close to the pavement." He did not see any activity around the station wagon or detect that its occupants were "having any trouble." Just as he reached the back of the station wagon, McDonald raised up and the defendant struck him. The defendant's headlights were "on low beam." He did not turn out so as to leave more room between his automobile and the station wagon and did not reduce his speed.

The plaintiff assigns as error the failure of the court to submit the issue of the last clear chance and to instruct the jury thereon, and certain portions of the court's charge upon the issue of contributory negligence, including the following:

> "With respect to this second issue, if Mr. Boyles, the defendant, has satisfied you by the greater weight of the evidence that on the occasion in question Herman Joseph McDonald failed to use due care under all the circumstances while working in darkness on a busy highway and thus exposing himself unreasonably to danger, or in failing to keep a proper lookout for approaching traffic, *or failure to warn approaching motorists of his presence by placing lights or flares,* or that he failed to get out of the way of the defendant's vehicle, and that such conduct in one or more respects constituted negligence, and if the defendant has further satisfied you by the greater weight of the evidence that such negligence on the part of Mr. McDonald concurred and cooperated with the negligence of the defendant as a proximate cause or one of the proximate causes of his death, you would answer the second issue YES." (Emphasis added.)

*Spruill, Trotter & Lane by DeWitt C. McCotter for plaintiff appellant.*

*Valentine & Valentine; Battle, Winslow, Scott & Wiley for defendant appellee.*

LAKE, J.  There is ample evidence to support the finding of the jury that the defendant was negligent and his negligence was a proximate cause of the death of the plaintiff's intestate. The evidence, if true, shows that the defendant saw the station wagon 200 yards before he reached it. It was parked on the shoulder close to the edge of the pavement upon a fill approaching a bridge, the defendant being familiar with the road. The taillights, headlights and the interior dome light of the station wagon were burning. One approaching a motor vehicle, so parked after dark in such a location, should foresee the probability of a dismounted passenger in its immediate vicinity. The evidence, if true, shows that the defendant was not blinded by the lights of oncoming vehicles and his view of the station wagon, the highway and the narrow space between the two was unobstructed for at least 200 yards. McDonald, wearing a white shirt, was squatting beside the rear wheel, his body projecting over the edge of the pavement. The defendant's headlights were burning. There was no oncoming traffic close enough to make it hazardous for the defendant to veer to his left and pass the station wagon so as to leave a space of several feet between his car and the station wagon. Without reducing his speed or veering to his left to the slightest degree, he passed so close to the parked station wagon that he struck McDonald, whom he did not see until virtually the instant of impact. This is not the care which a reasonable man would use in passing a parked vehicle under like circumstances.

There is also ample evidence in the record to support the finding of the jury that the plaintiff's intestate was negligent and that his negligence was a proximate cause of his injury and death. The evidence, if true, shows that he undertook to change the left rear tire of his vehicle while it was parked so close to the edge of the pavement that there was not room for his body between the vehicle and the edge of the pavement, thus projecting his body over a portion of the paved surface of the highway, although the shoulder of the road, which was level and in good condition, was wide enough to permit him, with safety to his vehicle and its occupants, to move it substantially further to his right and thus provide ample room for him to work upon the tire in safety. He continued to work in this position of danger though he saw, or in the exercise of reasonable vigilance could have seen, the defendant's automobile approaching close to the edge of the pavement, over a distance of 200 yards. This is not the care which a reasonable man would exercise for his own safety

under like circumstances. Unless there was error in the refusal of the
court to submit the issue of the last clear chance, or there was error
in the instructions of the court to which the plaintiff excepts, the
judgment should be affirmed.

Upon the evidence in this record the jury could properly have
found that the defendant's automobile, traveling at its admitted speed
of approximately 55 miles per hour, about 80 feet per second, reached
the point at such distance from McDonald that the latter did not
have sufficient time to avoid the collision by fleeing around either
end of his vehicle before the arrival of the defendant's automobile
at the point of impact, and yet the defendant had ample time, by a
mere flick of the wrist, to guide his car to his left so as to avoid
striking him. The evidence, if true, would also indicate that the de-
fendant did not actually see McDonald in his position of peril until
it was too late so to avoid the catastrophe, but that, had he main-
tained a lookout in the direction of his travel, the defendant could
have observed the perilous position of McDonald in time so to avoid
striking him. The question for us to determine is whether, under these
circumstances, the doctrine of the last clear chance would impose lia-
bility upon the defendant notwithstanding the prior contributory
negligence of McDonald. We conclude that it would and, therefore,
the evidence was such as to require the submission of that issue to
the jury for its determination of whether these facts did or did not
exist in this instance.

The doctrine of the last clear chance originated in the case of
*Davies v. Mann,* 10 M. & W. 547, 152 Eng. Rep. 588, the "Fettered
Ass Case." There, the plaintiff fettered the forefeet of his animal
and turned it out upon the highway to graze. Thereafter, the defend-
ant's horses and wagon came at an excessive speed down a hill and
ran over and killed the fettered animal which was unable to get out
of the way. The defendant's driver was "some little distance behind
the horses." The court sustained a verdict and judgment for the
plaintiff on the ground that, even if the plaintiff's animal was un-
lawfully upon the highway, the defendant "might, by proper care,
have avoided injuring the animal, and did not." The basis of the
decision was that the defendant's negligence, under such circum-
stances, was the proximate cause of the damage to the plaintiff's
property.

Thus, in *Davies v. Mann,* the plaintiff's negligence, or wrongful
act, had placed his property in a position of danger of injury by a
passing vehicle. Subsequently, when it was no longer possible for the
plaintiff (or his animal) to avoid the peril, the defendant negligently
permitted his vehicle to proceed along the highway in a dangerous

manner and to strike the plaintiff's animal. There is nothing in the report of the case to indicate that the defendant's driver actually saw the plaintiff's animal before it was struck. It thus appears that the plaintiff was allowed to recover on the ground that, had the defendant's driver been where he should have been and maintained the lookout he should have maintained, he would have seen the plaintiff's animal in time to avoid the collision.

In *Gunter v. Wicker*, 85 N.C. 310, which appears to have been the first case applying the last clear chance doctrine in North Carolina, Smith, C.J., observed that "there is great difficulty in extracting from the numerous adjudications of the courts any clear and distinct principle or formula determining when the cooperating agency of the plaintiff so directly contributes to the result as to deprive him of remedy against the other party to whose negligence the injury is attributable." The passage of time has not removed this difficulty. In Prosser, Law of Torts, 3d Ed., § 65, it is said of the doctrine of the last clear chance:

> "No very satisfactory reason for the rule ever has been suggested. * * * The application of the doctrine has been attended with much confusion. * * * It is quite literally true that there are as many variant forms and applications of this doctrine as there are jurisdictions which apply it. * * * In such a general area of confusion and disagreement, only very general statements can be offered, and reference must of necessity be made to the law of each particular state."

In the Restatement of the Law, Torts, Negligence, § 479, under the caption "DEFENDANT'S LAST CLEAR CHANCE," appears the following statement:

> "A plaintiff who has negligently subjected himself to a risk of harm from the defendant's *subsequent* negligence may recover for harm caused thereby if, *immediately preceding the harm*,
>
> (a)   *the plaintiff is unable to avoid it* by the exercise of reasonable vigilance and care, *and*
>
> (b)   the defendant
>
>       (i)   *knows* of the plaintiff's situation *and realizes* the helpless peril involved therein; or
>
>      (ii)   *knows* of the plaintiff's situation *and has reason to realize* the peril involved therein; or
>
>    (iii)   *would have discovered* the plaintiff's situation and thus had reason to realize the plaintiff's helpless

peril *had he exercised the vigilance which it was his duty to the plaintiff to exercise,* and

(c) *thereafter is negligent* in failing to utilize with reasonable care and competence *his then existing ability* to avoid harming the plaintiff." (Emphasis added.)

Section 480 of the Restatement, under the caption "LAST CLEAR CHANCE; NEGLIGENTLY INATTENTIVE PLAINTIFF," states:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

(a) *knew* of the plaintiff's situation, *and*

(b) *realized or had reason to realize* that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, *and*

(c) *thereafter is negligent* in failing to utilize with reasonable care and competence *his then existing ability* to avoid harming the plaintiff." (Emphasis added.)

It will be readily observed that the doctrine of the last clear chance is not a single rule, but is a series of different rules applicable to differing factual situations. Much of the apparent confusion in the decisions applying this doctrine stems from the failure to observe that the respective cases involve different factual situations and, therefore, call into play different rules comprising parts of the doctrine.

It must be admitted that there are in our own decisions with reference to the last clear chance doctrine expressions which seem inconsistent, but much of the resulting confusion disappears when these expressions are considered in the light of the facts of the cases where used. Thus, in *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337, the doctrine is referred to as the "doctrine of discovered peril," and it is said, "Peril and the discovery of such peril in time to avoid injury constitutes the backlog of the doctrine." Yet, in the same opinion, it is noted that the doctrine applies so as to impose liability upon a negligent defendant if "by the exercise of reasonable care defendant might have discovered the perilous position of the party injured or killed and have avoided the injury, but failed to do so."

It will be noted that the Restatement, § 479, *supra,* states that the doctrine imposes liability upon the defendant who did not ac-

tually know of the plaintiff's situation if, but only if, the defendant owed a duty to the plaintiff to maintain a lookout and would have discovered his situation had such a lookout been maintained. For the present it is sufficient to note that a motorist upon the highway does owe a duty to all other persons using the highway, including its shoulders, to maintain a lookout in the direction in which the motorist is traveling. *Black v. Milling Co.,* 257 N.C. 730, 127 S.E. 2d 515; *Smith v. Rawlins,* 253 N.C. 67, 116 S.E. 2d 184; *Carr v. Lee,* 249 N.C. 712, 107 S.E. 2d 544. Whatever may be the application of the doctrine of the last clear chance when the defendant owes no duty to the plaintiff to keep a lookout and has no actual knowledge of the plaintiff's helpless peril, it is well established in this State that where the defendant does owe the plaintiff the duty of maintaining a lookout and, had he done so, could have discovered the plaintiff's helpless peril in time to avoid injuring him by then exercising reasonable care, the doctrine of the last clear chance does impose liability if the defendant failed to take such action to avoid the injury. *Wanner v. Alsup,* 265 N.C. 308, 144 S.E. 2d 18; *Wade v. Sausage Co.,* 239 N.C. 524, 80 S.E. 2d 150. This is in accord with the decision in *Davies v. Mann, supra,* and with the majority view in other American jurisdictions. See: Prosser, Law of Torts, 3d Ed., § 65; Harper, Torts, § 138; 38 Am. Jur., Negligence, § 223; Bohlen, "The Rule in *British Columbia Railway Company v. Loach,*" 66 U. of Pa. L. Rev. 73.

In several of our former decisions the statement appears that the "original negligence" of a defendant cannot be relied upon to bring into play the last clear chance doctrine since this "original negligence" is cancelled or nullified by the plaintiff's contributory negligence. See: *Mathis v. Marlow,* 261 N.C. 636, 135 S.E. 2d 633; *Barnes v. Horney,* 247 N.C. 495, 101 S.E. 2d 315; *Ingram v. Smoky Mountain Stages, Inc., supra.* We think this is an inaccurate statement and we no longer approve it, although the decisions in those cases were correct applications of the doctrine. In each of those cases, it is clear that what the court held was that to bring into play the doctrine of the last clear chance, there must be proof that after the plaintiff had, by his own negligence, gotten into a position of helpless peril (or into a position of peril to which he was inadvertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and, thereafter, the defendant, having the means and the time to avoid the injury, negligently failed to do so. The only negligence of the defendant may have occurred after he discovered the perilous position of the plaintiff. Such "original negligence" of the defendant is sufficient to bring

the doctrine of the last clear chance into play if the other elements of that doctrine are proved. Thus, in *Wanner v. Alsup, supra,* and in *Wade v. Sausage Co., supra,* the defendants were not shown to have been negligent in the operation of their vehicles except in their respective failures to turn aside from their straight lines of travel in order to avoid striking the respective plaintiffs, one a pedestrian crossing the street, the other a man lying in the highway. Likewise, the doctrine may render liable a driver whose only, *i.e.,* "original" negligence was a failure to apply his brakes and stop his vehicle before striking a plaintiff whom he saw lying in the street.

Applying these principles to the present record, the defendant owed the plaintiff's intestate, and all other persons using the highway, the duty to maintain a lookout in the direction of the defendant's travel. Assuming the evidence to be true, had the defendant maintained such a lookout, he could have observed McDonald, stooping down beside the station wagon in the act of changing the tire, at a time when it should have been apparent to the defendant that McDonald could not save himself, but at which time the defendant could have avoided striking McDonald by merely turning slightly to his left. This is sufficient to bring the doctrine of the last clear chance into operation. It was a question for the jury whether these were or were not the facts of the case. The issue of the last clear chance should have been submitted to the jury with proper instructions thereon. The failure of the court to do so requires that the case be sent back for a new trial.

It is true that to invoke the doctrine of the last clear chance the plaintiff must plead it and the burden of proof is upon him. *Collas v. Regan,* 240 N.C. 472, 82 S.E. 2d 215; *Wagoner v. R. R.,* 238 N.C. 162, 77 S.E. 2d 701; *Bailey v. R. R.* and *King v. R. R.,* 223 N.C. 244, 25 S.E. 2d 833. The facts giving rise to the doctrine were sufficiently pleaded in the present action both in the complaint and in the plaintiff's reply.

The defendant's plea of *res judicata* by reason of the entry of a judgment of voluntary nonsuit in the former action cannot be sustained. *Gibbs v. Light Co.,* 265 N.C. 459, 144 S.E. 2d 393. It is immaterial that this judgment was entered on the motion of the plaintiff after an intimation by the then presiding judge that he would grant the defendant's motion for judgment of involuntary nonsuit if the parties did not reach a settlement of the matter.

Likewise, the contention that the present action is barred by failure to institute it within the time allowed by the statute cannot be sustained. The present action was instituted within one year after the entry of the judgment of voluntary nonsuit in the former

action, the plaintiff having paid the costs in the former action before instituting the present one. This the plaintiff had the right to do, notwithstanding the fact that the present action was instituted nearly five years after the accident and the death of his intestate, unless he now alleges a different cause of action from that alleged in the former suit. *Hall v. Carroll and Moore v. Carroll,* 253 N.C. 220, 116 S.E. 2d 459. The defendant contends that the plaintiff now pleads a different cause of action from that alleged in his pleadings in the former suit for the reason that in the former action he did not plead the doctrine of the last clear chance.

In the former action, the plaintiff alleged substantially the same acts of negligence by the defendant as those alleged by him in the present complaint. He there alleged, as in the present action, the facts which, if established by the evidence, make applicable the doctrine of the last clear chance. While the plaintiff must plead the facts making the doctrine applicable in order to rely upon it, it is not required that he plead the doctrine by its generally accepted name. "A cause of action consists of *the facts* alleged in the complaint." *Stamey v. Membership Corp.,* 249 N.C. 90, 105 S.E. 2d 282.

The defendant contends, however, that in the former action the doctrine was not pleaded except by way of an amendment to the complaint originally filed therein, which amendment was not filed until after the time allowed by the statute for the institution of such action had expired. It is true that an amendment to a pleading will not be deemed to relate back to the filing of the original pleading where the effect of the amendment is to state a new cause of action, or, by supplying an essential fact previously omitted, to state a cause of action where the original complaint stated none. *Stamey v. Membership Corp., supra.* An examination of the original complaint filed in the former action discloses, however, that it did allege a cause of action. It also alleged facts sufficient to make the doctrine of the last clear chance applicable. Furthermore, the doctrine of the last clear chance is regarded in this jurisdiction as but an application of the doctrine of proximate cause. *McMillan v. Horne,* 259 N.C. 159, 130 S.E. 2d 52; *Construction Co. v. R. R.,* 185 N.C. 43, 116 S.E. 3. The plaintiff having originally alleged negligence by the defendant and that such negligence was the proximate cause of the death of his intestate, his subsequent pleading, whether by way of amendment to the complaint or by way of reply to the answer, alleging the operative facts bringing into play the doctrine of the last clear chance, without change in the specifications of negligence, is not the allegation of a new cause of action. The original complaint in the former action, the amended complaint therein, the complaint in the present action

and the reply filed in it all relate to the same cause of action. Therefore, the plaintiff having brought the present action within one year from the entry of the judgment of voluntary nonsuit in the former action, and the former action having been instituted within the time allowed therefor by the statute, the plaintiff's right to maintain the present action is not barred by the statute of limitations.

Normally, a plaintiff pleads the doctrine of the last clear chance in a reply to the answer alleging contributory negligence. The plaintiff should not in his complaint anticipate a defense and undertake to avoid it. *Green v. Tile Co.*, 263 N.C. 503, 139 S.E. 2d 538; *Scott v. Jordan*, 235 N.C. 244, 69 S.E. 2d 557. However, the purpose of a complaint "is to give the opposing party notice of the facts on which plaintiff relies to establish liability." *Green v. Tile Co., supra.* It would be exceedingly technical to hold that, though the complaint in the former action alleged facts giving rise to the doctrine of the last clear chance, the plaintiff may not receive the benefit of the doctrine in the present action, where it is properly pleaded, merely because in the first suit those facts were alleged in the complaint rather than in a reply. Consequently, we hold that in the present action the plaintiff's pleadings are sufficient to raise the doctrine.

There is a further error in the instructions of the court upon the issue of contributory negligence which is sufficient in itself to require a new trial. G.S. 20-161 requires the driver of a "truck, trailer or a semi-trailer" disabled upon the highway after sundown to place red flares or lanterns to the front and rear of the disabled vehicle. This statute does not apply to the driver of a disabled passenger vehicle. *Rowe v. Murphy*, 250 N.C. 627, 109 S.E. 2d 474. The court's instruction on the issue of contributory negligence, set forth in the foregoing statement of the facts, would permit the jury to answer that issue in the affirmative if it found that the plaintiff's intestate failed to display such signals. While there was ample evidence to support the finding of contributory negligence in other respects, we cannot assume that the jury's answer to that issue was not brought about by this inadvertence in the charge.

New trial.

PARKER, C.J. and HIGGINS, J., concur in result.