RICKEY MARTIN VERNON v. GARRY RANDALL CRIST

No. 7521SC778

(Filed 3 March 1976)

Automobiles § 86— plaintiff leaning on vehicle — defendant driving vehicle away — failure to instruct on last clear chance — error

In an action to recover for personal injuries sustained by plaintiff when defendant drove away a car upon which plaintiff was leaning, the trial court properly refused to instruct the jury on the doctrine of last clear chance with respect to plaintiff's evidence where such evidence tended to show that there was no contributory negligence on the part of plaintiff, and the defendant's conduct in driving forward without warning, if found negligent by a jury, would render defendant liable for plaintiff's injuries; however, on the basis of defendant's evidence that he started the car and waited 15 to 20 seconds before slowly driving the car forward, the trial court should have instructed on the doctrine of last clear chance, since defendant's "original negligence," whether based on the act of initially driving the car forward or subsequently failing to stop the car, coincided with defendant's failure to utilize the last clear chance to avoid injury to plaintiff, it not being necessary that the basis of last clear chance be totally distinct from acts of "original negligence" and that both exist to invoke the doctrine of last clear chance.

APPEAL by plaintiff from Albright, Judge. Judgment entered 10 April 1975 in Superior Court, FORSYTH County. Heard in the Court of Appeals 21 January 1976.

The evidence tends to show that on the night of 24 April 1971 plaintiff, defendant, and two female companions had been riding together in defendant's car. After finishing work at a theater in Winston-Salem, they drove to a Pizza Inn for a snack and subsequently drove to the home of two friends, Michael and David Porter. As a prank, they placed bags of leaves on the front doorstep, rang the doorbell, rushed back to the car, and drove off. They drove around the block, returned to the Porter home, and parked the car on the left side of the street in front of the Porter home. The four people in the car walked to the front door and rang the doorbell. The Porter brothers answered the door and chatted with the foursome for approximately fifteen minutes. The two girls returned to the car first; a few minutes later the plaintiff returned to the car. He was unable to enter the car because tthe girls had locked the doors from the inside. After seeing the two girls laughing inside the car, the plaintiff walked around to the back of the car and, according to his evidence, leaned backwards against the edge of the trunk with one leg crossed over the other and one arm crossed over the other. In a short time the defendant returned to the car and also discovered that the doors were locked. According to plaintiff's testimony, after observing the defendant's initial difficulty in getting inside the car, he (plaintiff) turned around and looked down the road in the direction the back of the car was facing. Then before he had an opportunity to get away from the vehicle, the defendant entered the car on the driver's side, started the engine, and drove the car forward, causing the plaintiff to fall backwards and strike his head against the car and/or surface of the road. According to plaintiff's testimony:

> "As to what I did then after I looked around and saw that he had attempted to get in—I turned back and looked down the street. I didn't feel too well at the time and I had a headache and I just kind of looked down the street from the car. In other words, I was facing this direction (indicating) and I was looking down the street. There is a light pole and the streetlight right here and I was looking down the street. The next thing I remember is that Garry and the girls were kind of carrying on about the doors being locked and—you know—normal thing, unlock the door and no and that type of thing. I don't recall the conversation that carried on between them, but there was a lot of laughing. And, then, at that time, the last thing I

Vernon v. Crist

remember is remembering that the car started up and I started to pull one leg back over the other and I threw my hands behind me."

Defendant's evidence tends to show that after entering the car, he looked in the rearview mirror and saw plaintiff sitting on the trunk of the car. Approximately thirty seconds later defendant started the engine and put the car in forward gear; after a fifteen to twenty second pause, he released the emergency brake and drove the car forward very slowly. According to defendant's own testimony:

"As to what I did the fifteen to twenty seconds that I had it in drive and what I did before I moved the car—I made sure Rickey was on the car and would not have fallen off by looking in the mirror.

.   .   .   .

"As to how fast I went when I started out—I did not get over five miles an hour. I started off very slowly. When I started out, I was looking straight ahead. I would estimate that I had gone about twenty-five feet before I realized that Rickey wasn't on the trunk any longer—when Joyce said that he had slipped or fallen or jumped. I do not remember her exact words, no, sir. After I started off the car before he fell, before I started moving—no, sir, I did not look back in the rearview mirror at anytime. Once I had started the car in motion, no, sir, I did not look back in the mirror at all to see him on the car.

.   .   .   .

"As to what I was intending to do when I started the car in motion with Rickey on the trunk—drive a little ways and then let him off and let him come into the car."

The police officer who investigated the accident testified that an area approximately two and one-half feet wide in the center of the trunk and two small spots on the rear bumper had been wiped clean.

The following allegations appear in plaintiff's complaint:

"3. That at all times herein complained of the defendant was negligent in the following manner, among others:

.   .   .   .

"c. That although he had ample opportunity to do so and although he saw, or in the exercise of reasonable

diligence should have seen, that the plaintiff was standing and leaning against the rear of the automobile, that it was necessary for him to take action to avoid injuring the plaintiff, nevertheless took no action whatsoever to avoid injuring the plaintiff.

. . . .

"i. That the defendant was standing in close proximity to the plaintiff and saw, or should have seen, that the plaintiff was in a position where he could not properly protect himself but nevertheless proceeded to get into the car without any warning whatsoever to the plaintiff and started the car forward causing the plaintiff to fall and injure himself as set out herein."

Defendant answered by denying all allegations of negligence and pleading the defense of contributory negligence:

"Prior to the accident complained of, the plaintiff had voluntarily and knowingly placed himself in a place of danger on the trunk of the defendant's vehicle or in immediate and close proximity to the trunk of the defendant's vehicle and remained there when the accident occurred, voluntarily subjecting himself to danger and to any injury which might occur. The plaintiff failed to keep a proper lookout; failed to take proper care under the circumstances; placed himself in a position of known peril; remained in that position in spite of all the facts and circumstances involved; and the plaintiff was thereby guilty of such contributory negligence as constituted at least one of the proximate causes of the accident and of any injuries or damages which he may have sustained; and the plaintiff is thereby barred from any recovery against the defendant."

During the presentation of his case, plaintiff moved for permission to amend the complaint to include, in explicit terms, the doctrine of last clear chance. The motion was denied. In addition plaintiff requested that the jury be instructed on the doctrine of last clear chance after all of the evidence had been presented, and this request was also denied. Plaintiff assigns error to the trial judge's failure to grant permission to amend the complaint and instruct the jury according to the doctrine of last clear chance.

Vernon v. Crist

*White and Crumpler, by Michael J. Lewis, for the plaintiff.*

*Hudson, Petree, Stockton, Stockton & Robinson, by James H. Kelly, Jr., and W. Thompson Comerford, Jr., for the defendant.*

BROCK, Chief Judge.

This appeal questions the application of the last clear chance doctrine in the wake of *Exum v. Boyles,* 272 N.C. 567, 158 S.E. 2d 845 (1968). In particular we are confronted with the issue of whether the evidence in this case is sufficient to invoke the doctrine of last clear chance.

The doctrine of last clear chance is well established in this jurisdiction; it imposes upon a person the duty to exercise ordinary care to avoid injury to another who has negligently put himself in a position of peril, and who he can reasonably apprehend is unconscious of or inattentive to the peril or unable to avoid the imminent harm. 6 Strong, N. C. Index 2d, Negligence § 12, p. 30. The practical effect of the doctrine is to enable a plaintiff to recover from a defendant who, by exercising reasonable care and prudence, could have avoided the injury to the plaintiff, *notwithstanding plaintiff's negligence.* "The doctrine applies if and when it is made to appear that the defendant discovered, or by the exercise of reasonable care should have discovered, the perilous position of the party injured or killed and could have avoided the injury, but failed to do so. (Citations omitted.)" *Earle v. Wyrick,* 286 N.C. 175, 209 S.E. 2d 469 (1974). In short the doctrine applies when the evidence indicates that the defendant's failure to exercise his "last clear chance" to avoid the injury—not the contributory negligence of the plaintiff—is or could be adduced by a jury to be *the* proximate cause of the injury.

According to plaintiff's evidence, the car he was leaning against was driven forward without warning and before he had an opportunity to dislodge himself from the car. Assuming this version of the facts to be true, there is no evidence of contributory negligence on the part of the plaintiff, and the defendant's conduct in driving forward without warning, if found negligent by a jury, would render the defendant liable for plaintiff's injuries. Clearly, in the absence of evidence of contributory negligence by the plaintiff, the doctrine of last clear chance does not apply. Thus it was not error to refuse to

instruct on the doctrine of last clear chance with respect to plaintiff's evidence.

Defendant's version of the facts is more problematic. Assuming the fifteen to twenty second interval between the time the car was started and driven forward did occur, a jury could find plaintiff contributorily negligent for failing to get away from the car while he had the chance. In addition there is evidence of negligence on the part of defendant for driving the car forward with full knowledge that the plaintiff was sitting precariously on the trunk of the car. Finally, the evidence discloses the following: (1) as the car drove forward, plaintiff was in a position of peril and unable to ameliorate the danger by his own action; (2) defendant knew or should have known in the exercise of ordinary care that plaintiff was in a position of helpless peril; (3) defendant had the opportunity to avoid the harm to plaintiff by stopping the car; and (4) defendant's failure to stop caused plaintiff's injuries.

In this case the defendant's "original negligence," whether based on the act of initially driving the car forward or subsequently failing to stop the car, coincides with defendant's failure to utilize the "last clear chance" to avoid injury to plaintiff. Prior to *Exum v. Boyles, supra,* it was generally accepted that the doctrine of last clear chance only applied when both the plaintiff and defendant were negligent and *after the respective negligences had created the hazard,* the defendant had time to avoid the injury. *McMillan v. Horne,* 259 N.C. 159, 130 S.E. 2d 52 (1963). In other words, where the doctrine was applicable, recovery was not predicated on the original negligence of defendant because the original negligence of defendant was barred by plaintiff's contributory negligence and could not be made the basis for the application of the doctrine. For discussion of doctrine prior to *Exum v. Boyles, see* 6 Strong, N. C. Index 2d, Negligence § 12, p. 32. However, the requirement that the basis of last clear chance be totally distinct from acts of "original negligence" and that both must exist to invoke the doctrine of last clear chance was forcefully overruled in *Exum v. Boyles, supra:*

"In several of our former decisions the statement appears that the 'original negligence' of a defendant cannot be relied upon to bring into play the last clear chance doctrine since this 'original negligence' is cancelled or nullified by the plaintiff's contributory negligence. See: *Mathis*

Vernon v. Crist

*v. Marlow,* 261 N.C. 636, 135 S.E. 2d 633; *Barnes v. Horney,* 247 N.C. 495, 101 S.E. 2d 315; *Ingram v. Smoky Mountain Stages, Inc., supra.* We think this is an inaccurate statement and we no longer approve it, although the decisions in those cases were correct applications of the doctrine. In each of those cases, it is clear that what the court held was that to bring into play the doctrine of the last clear chance, there must be proof that after the plaintiff had, by his own negligence, gotten into a position of helpless peril (or into a position of peril to which he was inadvertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and, thereafter, the defendant, having the means and the time to avoid the injury, negligently failed to do so. The only negligence of the defendant may have occurred after he discovered the perilous position of the plaintiff. Such 'original negligence' of the defendant is sufficient to bring the doctrine of the last clear chance into play if the other elements of that doctrine are proved. Thus, in *Wanner v. Alsup, supra,* and in *Wade v. Sausage Co., supra,* the defendants were not shown to have been negligent in the operation of their vehicles except in their respective failures to turn aside from their straight lines of travel in order to avoid striking the respective plaintiffs, one a pedestrian crossing the street, the other a man lying in the highway. Likewise, the doctrine may render liable a driver whose only, i.e., 'original' negligence was a failure to apply his brakes and stop his vehicle before striking a plaintiff whom he saw lying in the street."

In our opinion the evidence in this case is sufficient to invoke the doctrine of last clear chance. Indeed, *Exum v. Boyles, supra,* compels it. It was prejudicial error not to instruct the jury on the doctrine of last clear chance.

New trial.

Judges PARKER and ARNOLD concur.