TEDDY LEE BARNES v. WILLIAM ALEXANDER HORNEY.

(Filed 10 January, 1958.)

1. **Automobiles § 36—**

There is no presumption of negligence from the mere fact that an accident has occurred.

2. **Automobiles § 42k—**

Evidence tending to show that a pedestrian, who had been without sleep for two days and nights, sat down by the side of a narrow dirt and gravel road and went to sleep, and that he was lying parallel with and between the ruts in the road when run over by defendant's car, *is held* to disclose contributory negligence as a matter of law on the part of the pedestrian.

3. **Automobiles § 33—**

While a motorist, in the exercise of his duty to maintain a proper lookout, is required to anticipate that other travelers, including pedestrians, will be using the highway, he is not required to anticipate that a person will be lying prone on the highway.

4. **Automobiles § 45: Negligence § 10—**

The doctrine of last clear chance is not predicated on the original negligence of defendant, but upon his failure, after negligence and contributory negligence have canceled each other, to avoid the injury, and the doctrine cannot apply unless defendant has sufficient opportunity, in the exercise of ordinary care, to discover and appreciate plaintiff's perilous position in time to avoid injuring him.

5. **Automobiles § 42n—**

Evidence that plaintiff was lying prone, parallel with the ruts of a shady dirt road, that defendant was driving his automobile with the lights on low beam and could have seen plaintiff for a distance of some 200 feet, and that defendant did see an object in the road, which he mistook for an old box or trash, but didn't recognize the object as a body until too late to avoid injury, *is held* insufficient to show that defendant had opportunity to avoid the injury after he discovered or should have discovered plaintiff's perilous position, and therefore the doctrine of last clear chance does not apply to preclude nonsuit.

JOHNSON, J., dissenting.

PARKER AND BOBBITT, J.J., concur in dissent.

APPEAL by plaintiff from *McKeithen, S.J.,* May, 1957 Term, RANDOLPH Superior Court.

Civil action to recover for personal injuries to the plaintiff alleged to have resulted from the actionable negligence of the defendant in the operation of his automobile at an excessive rate of speed, without proper lights, and in a reckless and careless manner. The defendant denied negligence and pleaded contributory negligence on the part of the plaintiff. By reply, the plaintiff alleged the defendant had the last clear chance to avoid the injury.

The plaintiff, a soldier, was at home on leave. Just before dark on July 4, 1955, he sat down by the side of a narrow dirt and gravel road in Randolph County and went to sleep. He had been drinking beer and had not slept for two days and nights. He was awakened by being run over by an automobile. As a result he suffered serious and permanent injuries.

The plaintiff introduced the adverse examination of the defendant in which appeared the following: "There is a dirt road all the way from my brother's residence to where I ran over Barnes. No, I did not cut my lights on just as I crossed the Jackson Creek bridge. I cut them on before, when I struck the hill. I cut them on dim. I didn't cut them on bright. When I say dim, I mean the lower division of my driving lights. . . . I did not cut on parking lights. . . . As to how far I was from him when I first saw him, I would say five or six feet . . . from my front bumper . . . he had on a pair of pants, no shirt, army shoes. . . . As to whether I saw him, I saw an object. I had no idea it was a man. Looked like a box or something. Looked like an old box where somebody had thrown out some trash. . . . I didn't see a head, I didn't recognize it was a body. My car straddled Mr. Barnes. Those are two ruts and he was lying . . . half way between the two ruts. This is a dirt road with gravel on it. The two ruts I speak of were used for single lane traffic. . . . The part of my car that hit him was the oil pan. . . . As to how many feet of vision I had as I rounded the curve . . . facing the location that Barnes was in the road at that particular place, . . . I would say 20 or 25 feet . . . road makes a turn there. . . . I went 25 feet past him before I brought my vehicle to a stop. . . . I was making about 30 as I was in no hurry. It was a crooked road . . ."

There was other evidence that the point where Barnes was run over could be seen for a distance of about 200 feet. There was no evidence automobile lights would enable the driver to see a man lying in the road at that distance, or at any particular distance. There was evidence that weeds, bushes, and trees grew on both sides of the road and some of the branches of the trees extended over the road. The accident occurred about 8:30 p. m.

At the close of plaintiff's evidence the court entered judgment of involuntary nonsuit, from which the plaintiff appealed.

*Ottway Burton, for plaintiff, appellant.*
*McNeill Smith and John Dortch.*
*Smith, Moore, Smith, Schell & Hunter.*
*By: McNeill Smith, for defendant, appellee.*

HIGGINS, J. The plaintiff's allegations of speed are not supported by evidence. While the plaintiff argues the defendant was driving after dark with lights on dim, it is obvious from the evidence, however, the defendant was operating his car with lights on low beam at a speed of about 30 miles per hour on a narrow, crooked, dirt and gravel road. The plaintiff's

evidence is to the effect that as the defendant proceeded along this shaded dirt road he perceived some object in the road at a distance of 20 or 25 feet; that he thought it was a trash box. The evidence discloses the plaintiff was lying parallel with and between the ruts. Whether his head or his feet were in the direction of the defendant's approach is not disclosed.

If the case were made to turn solely on whether the defendant was negligent, the question might present some difficulty. Negligence is not presumed from the mere fact an accident has occurred. *Lane v. Bryan*, 246 N.C. 108, 97 S.E. 2d 411; *Fleming v. Twiggs*, 244 N.C. 666, 94 S.E. 2d 821; *Shinault v. Creed*, 244 N.C. 217, 92 S.E. 2d 787; *Mitchell v. Melts*, 220 N.C. 793, 18 S.E. 2d 406. However, the very fact the plaintiff, without sleep for two days and nights, attempted to make his bed in the middle or on the side of a crooked, shaded, dirt road, shows negligence as a matter of law. *Holderfield v. Trucking Co.*, 232 N.C. 623, 61 S.E. 2d 904. A driver of an automobile may anticipate that other travelers will be using the highway and he should be on the lookout for them. However, it would seem to be too much to require him to anticipate the highway would be used as sleeping quarters. Of course, a pedestrian has the right to use the highway, but a pedestrian is a foot traveler, and the right to walk does not carry with it the right to lie down and go to sleep. One who voluntarily places himself in a position of known peril fails to exercise ordinary care for his own safety. *Bogen v. Bogen*, 220 N.C. 648, 18 S.E. 2d 162.

The plaintiff, apparently realizing the danger of placing his reliance on the issues of negligence and contributory negligence, contends that the judgment of involuntary nonsuit should be reversed upon the theory the defendant had the last clear chance to avoid the injury. Liability under the last clear chance, or discovered peril, doctrine is predicated, not on any original negligence of the defendant, but upon his opportunity to avoid injury after discovering the perilous position in which another has placed himself. Defendant's liability is based upon a new act of negligence arising after negligence and contributory negligence have canceled each other out of the case. Liability on the new act arises after the defendant has had sufficient opportunity, in the exercise of ordinary care, to discover and to appreciate the plaintiff's perilous position in time to avoid injuring him. *Garrenton v. Maryland*, 243 N.C. 614, 91 S.E. 2d 596; *Wade v. Sausage Co.*, 239 N.C. 524, 80 S.E. 2d 150; *Mount Olive Mfg. Co., v. R. R.*, 233 N.C. 661, 65 S.E. 2d 379; *Holderfield v. Trucking Co., supra; Johnson v. Morris' Administratrix*, (Ky.) 282 S.W. 2d 835.

BARNES v. HORNEY.

The evidence in this case is insufficient to show the defendant had the opportunity to avoid the injury after he discovered, or should have discovered, the plaintiff's perilous position. The judgment of nonsuit entered in the court below at the close of the plaintiff's evidence is

Affirmed.

JOHNSON, J., dissenting. There is no evidence here that this boy consciously bedded up in the road. He was a paratrooper. He was at home, out in the country from Asheboro, on a weekend furlough which included Sunday, July 4th. Friday night he was on guard duty at camp, and got no sleep. Saturday night he was en route home on the bus, and did not sleep. Sunday afternoon before his injury he rode around the countryside with his friend Hunt. Just before dark they were in the vicinity of the home of Hunt's girl friend—whom he later married. Hunt wanted to drop by her home and deliver a message. The plaintiff, not wishing to go with his friend on this mission, was put out side of the road a few hundred yards from the girl's home, to be picked up a little later by Hunt. There was a ditch on each side of the road. Beyond each ditch was a bank. The plaintiff sat down on a rock on the bank on the east side of the road. He was facing the road, with his feet in the side ditch. There, according to all the evidence, he went to sleep. A few minutes later he was awakened by being run over in the middle of the road by the defendant's automobile.

This line of evidence points unerringly to the inference that the boy simply moved in his sleep from the place of safety beyond the ditch to the place of danger in the road. It is a matter of common knowledge that some people sometimes walk and move around while asleep and are wholly unconscious of their movements. See Macbeth, Act V, Scene 1.

The majority opinion states that the boy had been drinking beer. This is so, but it is doubtful whether any of the evidence justifies the inference that beer drinking had anything to do with causing the boy to be asleep in the road. The plaintiff's evidence clearly shows that he was in nowise intoxicated. The most that the evidence discloses against him in this respect is that he and his companion Hunt drank some beer earlier that day, but none within five or six hours of the time of the injury.

Since the plaintiff "must have done that which he ought not to have done, or omitted that which he ought to have done, *as a conscious being*," (italics added) (38 Am. Jur., Negligence, p. 671) in order to have been contributorily negligent as a matter of law, it may be doubted that this record justifies charging him with such negligence.

But be this as it may, and conceding that the plaintiff for being down in the middle of the road was chargeable with contributory negligence, it seems to me it is a clear-cut case for the application of the last clear chance or discovered peril doctrine.

In *Wade v. Sausage Co.*, 239 N.C. 524, 80 S.E. 2d 150, *Ervin, J.*, states the salient facts in that case this way: "The plaintiff is subject to dizzy spells of a disabling character. Despite this infirmity, he undertook to walk eastward upon the main-traveled portion of the highway sometime before four o'clock on the morning of 24 July, 1952. While so doing, he became dizzy, lost consciousness, fell, and came to rest athwart the center of the pavement with his feet and legs projecting into the southern traffic lane. Shortly thereafter the defendant Hicks came upon the scene from the west, driving his employer's eastbound motor truck along the southern traffic lane at a speed of about forty-five miles an hour. The truck was equipped with burning headlights which fell upon the plaintiff's helpless and prostrate body and rendered it plainly visible to Hicks when the vehicle in his charge was 225 feet away. Although he could have seen the plaintiff throughout the intervening 225 feet and could have avoided striking him by stopping the truck or by driving it onto the southern shoulder of the highway, Hicks drove the vehicle straight ahead at unabated speed along the southern traffic lane and ran over the plaintiff's ankles and feet, inflicting painful and permanent injuries upon him." *Held,* the case was properly submitted to the jury under the last clear chance doctrine, and the verdict and judgment in favor of the plaintiff were upheld.

Quoting further from the opinion by *Ervin, J.:* "Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him." (Citing authorities) The evidence on which

the plaintiff in the instant case relies satisfies all four of the foregoing elements.

Here the clear, unobstructed sight distance down the road from where the plaintiff was lying was placed by the witnesses at some 200 to 300 feet. W. A. Carter, a supervisor of roads, testified: "I'd say the sight distance was from 200 to 250 feet." C. O. Moore, a highway patrolman, testified: "With respect to vision, I would say you could see 100 yards." The evidence discloses no woods or bushes along the sides of the road that interfered with the defendant's vision as he approached where the plaintiff was lying, and the evidence indicates and the photographs show the overhanging branches were high enough not to have interfered with his vision. The surveyor's profile map shows that from a point 203 feet below where the plaintiff was lying, looking in the direction from which the defendant approached, the road was practically straight but was slightly downgrade for the first 90.42 feet, and then gradually upgrade for the remaining 112.40 feet. The lowest point in this 203-foot section of the road is only about six feet below an imaginary straight line projected between the high point at each end of the section. There is no valid reason why the defendant by the exercise of reasonable care and the use of proper headlights should not have seen the plaintiff during the last 200 feet before reaching him.

G.S. 20-129(a) provides: "Every vehicle upon a highway within this State during the period from a half hour after sunset to a half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of two hundred feet ahead, shall be equipped with lighted front and rear lamps as in this section respectively required. . . ."

G.S. 20-131(a). provides: "The head lamps of motor vehicles shall be so constructed, arranged, and adjusted that, except as provided . . . they will at all times mentioned in Sec. 20-129, and under normal atmospheric conditions and on a level road, produce a driving light sufficient to render clearly discernible a person two hundred feet ahead. . . ."

The defendant was driving with his lights on dim—low beam. There was no reason why the lights should not have been on bright beam. This was negligence. *Pierce v. Seymour*, 222 N.C. 42, 21 S.E. 2d 884.

Thus, it seems manifest that the defendant was not keeping a proper lookout. "The requirements of prudent operation are not necessarily satisfied when the defendant 'looks' either preceding or during the operation of his car. It is the duty of the driver of a motor vehicle not merely to *look* but to keep an

*outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen." *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330.

"It is a general rule of law that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. This duty also requires that the operator must be reasonably vigilant, and that he must anticipate and expect the presence of others." *Adams v. Service Co.,* 237 N.C. 136, 74 S.E. 2d 332.

Conceding, as stated in the majority opinion, that "It would seem to be too much to require him (the defendant) to anticipate the highway would be used as sleeping quarters," nevertheless the defendant was required to keep a proper lookout and to see what he should have seen in the road ahead of him.

As I interpret this record, there was ample evidence to carry the case to the jury under the doctrine of the last clear chance. This doctrine was pleaded by the plaintiff. My vote is to reverse the nonsuit.

PARKER AND BOBBITT, J.J., concur in this dissent.