HELEN D. BATTLE, ADMINISTRATRIX OF THE ESTATE OF BERNARD L. BATTLE, DECEASED v. LANGLEY TAYLOR CHAVIS.

(Filed 30 March, 1966.)

1. **Automobiles § 45;    Negligence § 10—**

  The doctrine of last clear chance does not apply if, under the circumstances, defendant does not have the time and means to avoid injury after he has seen or should have seen plaintiff or intestate in a perilous situation and apparently inadvertent to the danger or unable to extricate himself therefrom.

2. **Automobiles § 41l—**

  While a motorist is under duty to keep a proper lookout and to anticipate the use of the highway by other traffic and travelers, he is not required to anticipate that a pedestrian will be lying or sitting upon the highway in his path of travel.

3. **Same—**

  The evidence tended to show that defendant was traveling some 35 miles an hour upon an asphalt highway, that in traversing the crest of a hill he dimmed his lights for oncoming traffic, and that after traversing the next 200 feet, and while his lights were still deflected, he struck intestate who, dressed in dark clothes, was sitting on the highway. *Held:* The evidence discloses that defendant did not have time and means after he discovered, or should have discovered, intestate's perilous position to have avoided striking intestate.

4. **Same—**

  Negligence is not presumed from the mere fact that a pedestrian was struck by defendant's vehicle, and plaintiff has the burden of showing negligence and that such negligence caused injuries resulting in death, and not leave in speculation whether intestate died from such injuries or from alcoholism or epileptic seizure.

  MOORE, J., not sitting.

APPEAL by plaintiff from *Bundy, J.,* September 20, 1965 Session, NASH Superior Court.

Bernard L. Battle died January 25, 1963 and this action was brought by his administratrix to recover for his alleged wrongful death due to the negligence of the defendant.

The plaintiff's evidence tended to show that on January 25, 1963 about 10 o'clock p.m., the defendant, Chavis was operating his 1956 Chevrolet car on rural paved road No. 1613. It had been raining that night and there was some fog in "low bottom" places on the highway. About the crest of a hill the defendant met a car traveling in the opposite direction and dimmed his lights for passing. At this point he was about 200 feet from the scene of the accident and was proceeding downhill. Before he had returned his lights to bright and was about 130 feet from the deceased, Mrs. Inez Bryans, who was riding on the front seat with the defendant said, "Lord, Langley, there's a box in the road, what's that in the road?" On his adverse examination which was introduced by the plaintiff, defendant replied " 'I don't know. * * * That's a man,' but by that time we had hit him. * * * I didn't know what it was until I hit it." Defendant stopped his car within a yard after he hit the deceased. He further testified that he was traveling at a speed of about 35 miles per hour, that the surface of the road was black-top asphalt, that the deceased person was sitting in the highway "about halfway between the white line and the (right) side of the hard surface road;" that he had on dark clothing and his head was "dropped * * * down on his chest." The deceased had one scar or injury on his forehead and died that night. Plaintiff's evidence showed that Battle was in a grocery store nearby about 8 o'clock that night, that he began "trembling all over like a man with a heavy chill, shaking backwards and forwards." About 9:30 o'clock that night he was taken from the store to his home by one Charlie Lloyd.

Dr. L. P. Armstrong testified for the plaintiff that he had treated Battle for ten or twelve years for epilepsy; that "(a)fter Battle had an epileptic seizure his mind would not be clear," and that, in his opinion, Battle had had an epileptic seizure on the night of his death. Another witness for the plaintiff testified that when he was in the store that the deceased "looked like a man about two-thirds drunk."

The deceased had died when the officers came to investigate the accident and no autopsy was held to determine the cause of his death.

Upon the conclusion of the plaintiff's evidence, the defendant

moved for judgment as of nonsuit and the motion was allowed. Plaintiff appeals, assigning errors.

*Spruill, Trotter & Lane by DeWitt C. McCotter, III, Attorneys for plaintiff appellant.*

*Fields & Cooper and Leon Henderson, Jr., by Milton P. Fields, Attorneys for defendant appellee.*

PLESS, J. In her brief the plaintiff concedes that in order to prevail she must do so on the doctrine of last clear chance. In *Wade v. Sausage Co.*, 239 N.C. 524, 80 S.E. 2d 150, the court sets forth the four elements of the last clear chance doctrine which must be established before a pedestrian may recover against the driver of a motor vehicle. "Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him." (Citing numerous cases).

It is debatable that the evidence would permit the submission of the case to the jury upon the first two elements but, in our opinion, the plaintiff cannot prevail upon the third requirement "that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it." The plaintiff's evidence showed that the defendant had met and passed an oncoming car about the crest of a hill some 200 feet from the scene of the accident and that in passing he had dimmed the lights of his car. The accident occurred within a few seconds thereafter and before the defendant had come back to bright lights. He was driving at a speed of some 30 to 35 miles per hour and his lights and brakes were in good working order. The plaintiff's evidence further showed that the pavement at this point was black-top asphalt, that the deceased

was dressed in dark clothing and that he was not seen by the defendant nor his passengers until he was approximately 130 feet from the decedent. At a speed of 30 miles per hour, it would take less than three seconds to traverse this distance and, allowing for reaction time to apply his brakes, we cannot hold that the defendant was negligent in being unable to stop before striking the deceased.

The doctrine contemplates a last "clear" chance, not a last "possible" chance to avoid the accident; it must have been such a chance as would have enabled a reasonably prudent man in like position to have acted effectively. Aydlett v. Keim, 232 N.C. 367, 61 S.E. 2d 109.

"A driver of an automobile may anticipate that other travelers will be using the highway and he should be on the lookout for them. However, it would seem to be too much to require him to anticipate the highway would be used as sleeping quarters." Barnes v. Horney, 247 N.C. 495, 101 S.E. 2d 315. We are of the opinion that the dark clothes of the deceased blending into the background of the black pavement made it unreasonable to expect the defendant, even though driving at a slow rate of speed, to be able to see the deceased in time to avoid striking him.

A jury could have found that the deceased was not negligent and that his position on the highway was due to an epileptic seizure. In this event, the doctrine of last clear chance would not be applicable. However, for the reasons stated in regard to it, we do not feel that the evidence would permit a finding of actionable negligence on the part of the defendant.

We have considered the plaintiff's evidence of an experiment showing that the deceased could have been seen for 200 feet with bright lights and 130 feet if they were dimmed. Even if the conditions approximated those of the night in question, which is doubtful, we are still of the opinion that actionable negligence of the defendant has not been shown.

The cause of death of the deceased is left to conjecture. No autopsy was held and the deceased had only one scar or blow on his forehead, although apparently a very serious one. Whether it was inflicted by the car the defendant had just passed or by the defendant's car, the evidence does not disclose. The evidence does not reveal whether he died from a blow, acute alcoholism or epileptic seizure. "No negligence is presumed from the mere fact that plaintiff's intestate was run over, and killed by the defendant." Shinault v. Creed, 244 N.C. 217, 92 S.E. 2d 787.

We are of the opinion that the defendant's motion to dismiss the action as in case of nonsuit was well taken.

Affirmed.

MOORE, J., not sitting.