BETTY SANDERS WILLIAMSON, ADMINISTRATRIX OF LARRY EUGENE SANDERS, DECEASED v. REBECCA BRENDA McNEILL, DANIEL LONNIE CHEEK AND LONNIE THOMAS CHEEK

No. 7019SC289

(Filed 15 July 1970)

1. **Automobiles § 83— automobile accident — intestate who voluntarily lay on highway — contributory negligence**
    Evidence tending to show that the plaintiff's intestate voluntarily lay upon an unlighted rural road at night, where he was struck and fatally injured by defendant's automobile, *held* to disclose the intestate's contributory negligence as a matter of law.

2. **Trial § 22— nonsuit — reasonable inference**
    A reasonable inference is valid on nonsuit but speculations are not.

3. **Automobiles § 89— automobile accident — intestate who voluntarily lay on highway — last clear chance**

Evidence that the plaintiff's intestate, and two other persons, had voluntarily lain on an unlighted rural road at night; and that the defendant motorist, who was driving at a speed of 50 mph, had perhaps 150 or 200 feet — that is, from less than two to as much as 2.6 seconds — within which to recognize that the dark shapes on the road ahead of her were the intestate and his companions, *held* insufficient to take the case to the jury on the doctrine of last clear chance.

HEDRICK, J., dissents.

ON certiorari to review trial before *Lupton, J.*, at the 13 May 1969 Session of RANDOLPH Superior Court.

This is an action for damages for wrongful death of plaintiff's intestate, her son, by virtue of the alleged negligence of the defendants in running over and killing said intestate, age 18, on the night of 30 August 1966. The complaint alleges that intestate was lying on the highway in a helpless condition at the time he was struck by defendants' automobiles. In their answers defendants alleged that intestate and two other young men, a short time prior to being struck, lay down in the southbound traffic lane of the highway and were lying there in a prone position when struck; defendants pleaded contributory negligence. By way of reply plaintiff pleaded last clear chance.

Plaintiff's evidence tended to show: Defendant McNeill was driving her Ford south on Highway 705 accompanied by fellow employees returning to their homes after the second shift at an Asheboro factory. She was driving at about 50 mph in the open country (presumably in a 55 mph speed zone) and reached the scene of the accident 22 miles from the factory at about 1:25 or 1:30 a.m. A passenger in her car testified: "* * * I didn't see anything until we hit something, and it was just like we went over something, like that. Just like it might be a log laying here in the road * * *. It seemed to me like the car ran over something two or three times. * * * I don't know if Mrs. McNeill had applied brakes just before we went over this bump. * * *"

Defendants Cheek were the owner and operator of a Falcon automobile following the McNeill car at a distance of six or seven car lengths. A passenger sitting on the right in the front seat of the Falcon testified that he saw a white object at the right rear bumper of Mrs. McNeill's white car. The driver of the Falcon cut sharply to the left but struck another object in the center of the road. The passenger testified: "I do not remember seeing any brake lights come on on Becky's [defendant McNeill's] car * * * Yes sir, this all happened in a split second. * * * I don't remember hear-

ing any horn immediately before I saw this white object. * * * We later determined that the object I had seen at the right rear of the McNeill car and the object which Danny's car hit, was a human body. * * *"

The investigating patrolman testified that he found three bodies at the scene. He arrived from a southerly direction and first saw the body of Charles Leroy Carter, clothed in dark pants and a white tee shirt, lying with his head across the center line and his feet approximately five feet from the east shoulder. Approximately 29 feet north lay the bodies of Clinton Eugene Cox and intestate, lying together diagonally across the west lane, with intestate's body being further to the north, his head approximately a yard from the edge of the highway and his feet approximately one foot from the edge. The patrolman observed what appeared to be intestate's last gasp for breath. All three boys sustained skull fractures and lacerations which an expert witness said were of a type that could cause death and could have been caused by being struck by a motor vehicle. There was evidence of flesh, blood and hair on the underside of defendant McNeill's automobile.

At the close of her evidence, plaintiff submitted to judgment of voluntary nonsuit as to defendants Cheek; defendant McNeill's motion for judgment of involuntary nonsuit was granted and appeal entries were made. There were extensions of time within which to docket case on appeal because of plaintiff's substantial difficulty in having the transcript prepared, and this Court in conference on 1 December 1969 allowed writ of certiorari.

*H. Wade Yates for plaintiff appellant.*

*Perry C. Henson and Daniel W. Donahue for defendant appellee, Rebecca Brenda McNeill.*

BRITT, J.

Conceding, *arguendo,* that plaintiff's evidence made out a case of actionable negligence, we are of the opinion that such evidence also (1) established contributory negligence as a matter of law and (2) failed to establish the element of last clear chance which renders that doctrine applicable only when the defendant "* * * had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it * * *." See *Wade v. Sausage Co.,* 239 N.C. 524, 80 S.E. 2d 150.

**[1]**    (1) *Contributory Negligence.* Plaintiff alleges that intestate "was lying in a helpless condition on said N. C. Highway"; defendant admits that intestate "was lying" on the highway but denies the remainder of the allegation. Plaintiff's evidence tended to show that intestate was wearing bluejeans and a blue plaid shirt. At least one, perhaps both, of the other boys were wearing white tee shirts and both were wearing bluejeans. Intestate was 18 years old, in the Army, and "in the best of health." His mother testified: "He did not consume intoxicating beverages to my knowing," and "* * * that evening, as far as I could tell neither of the boys had been drinking. No, sir, as far as I could tell he was not taking any type of strong medicine or taking any drugs." An investigating patrolman testified: "As a part of my investigation on each person I did try to determine if there was the odor of alcohol, and I did not detect the odor of alcohol on either."

**[1, 2]**    All three boys had severe head injuries, but there is no evidence of any other injuries, or any impact prior to that with the car driven by the defendant. Defendant has speculated that they were playing "chicken," or in view of the evidence that the asphalt was warmer than the unseasonably cool air, that they lay down to get warm and fell asleep. Plaintiff has speculated that someone injured or drugged them and placed them there. A reasonable inference is valid on nonsuit but speculations are not; the only reasonable inference which we may draw in the absence of evidence more compelling than that which is before us now is that intestate, for whatever reason, voluntarily placed himself on the highway. In so doing, he failed to exercise for his own safety the care of an ordinarily prudent person and his negligence was a proximate cause of his unnecessary death. *Starnes v. McManus,* 263 N.C. 638, 140 S.E. 2d 15. See also *Barnes v. Horney,* 247 N.C. 495, 101 S.E. 2d 315.

**[3]**    (2)  *Last Clear Chance.* In *Wade v. Sausage Co., supra,* Ervin, J., set out the following statement of the doctrine of last clear chance:

> "Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered

pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him. [Citing numerous authorities.]"

In *Aydlett v. Keim*, 232 N.C. 367, 61 S.E. 2d 109, the court said: "The doctrine contemplates a last 'clear' chance, not a last 'possible' chance, to avoid the accident * * *. * * * The application of the last clear chance doctrine is invoked only where there was a sufficient interval of time between the plaintiff's negligence and his injury during which the defendant, by the exercise of reasonable care could or should have discovered the perilous position of the plaintiff in time to avoid injuring him."

The defendant was operating her automobile at a speed of 50 miles per hour (72 feet per second) along un unlighted rural road. She came over a knoll some 450 feet from the point at which the first two bodies were found; the road then leveled off at approximately 150 feet from that point. There is no evidence of the number of feet of highway made visible by her headlights. Judicial notice is taken of G.S. 20-129 and G.S. 20-131 which require visibility of 200 feet. Defendant had perhaps 150 or 200 feet, that is, from less than two to as much as 2.6 seconds within which to recognize that the dark shapes on the edge of the asphalt road were not shadows, patches, or something else inanimate, but were in fact human beings in peril, and not only to recognize this fact but to react in such manner as to prevent the tragedy.

The fact that Mrs. Shamburger was able to avoid striking the bodies when she subsequently arrived upon the scene driving her car in a southerly direction is of no probative value as evidence in the nature of an experiment. The conditions are too dissimilar: Her attention was attracted by persons standing in the road waving their arms; she was thus warned of some abnormal situation, and one body wearing a white tee shirt was separate from the others, lying in the middle of the road where it could be more easily seen.

The strongest precedent for plaintiff's case is *Wade v. Sausage Co., supra*. There, however, the plaintiff lay in the center of the road, defendant drove a truck (which, being higher, would allow better visibility), the headlights "rendered it [plaintiff's body] plainly visible * * * 225 feet away," and defendant was driv-

ing 45 miles per hour (at 65 feet per second, 3.5 seconds within which to react). The substantial difference in the facts now before us dictates a different result. The facts in our case show at best only a "possible chance" and not a "clear chance" to have averted the tragedy; in such a case the doctrine will not be applied.

In *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276, where the plaintiff collided with the rear of an unlighted truck parked on the highway at night, the court stated: "The duty of the nocturnal motorist to exercise ordinary care for his own safety does not extend so far as to require that he must be able to bring his automobile to an immediate stop on the sudden arising of a dangerous situation which he could not reasonably have anticipated. Any such requirement would be tantamount to an adjudication that it is negligence to drive an automobile on the highway in the nighttime at all. The law simply decrees that a person operating a motor vehicle at night must so drive that he can stop his automobile or change its course in time to avoid collision with any obstacle or obstruction *whose presence on the highway is reasonably perceivable to him or reasonably expectable by him.* It certainly does not require him to see that which is invisible to a person exercising ordinary care." (Emphasis added.)

In *Barnes v. Horney, supra,* plaintiff fell asleep lying between the ruts in a crooked country road lined with weeds and bushes. He was injured when he was struck by defendant's oil pan as defendant's car passed over him. The court held last clear chance inapplicable for the reason that there was no clear evidence that defendant should have recognized that the object which he saw in the road was a human body. It was not, in the words of *Chaffin,* "reasonably perceivable." We consider such a rationale appropriate as applied to facts of this instant case and for that reason hold last clear chance inapplicable to the facts of this case and unavailable to plaintiff in her effort to survive nonsuit.

For the reasons stated the judgment of the superior court is

Affirmed.

BROCK, J., concurs.

HEDRICK, J., dissents.