HENRY H. SINK, JR., ANCILLARY ADMR. OF THE ESTATE OF SAMMY P. MERCURIO v. DONALD ELRIDGE SUMRELL

No. 7810SC633

(Filed 15 May 1979)

1. **Automobiles § 62— deceased asleep on highway—no negligence of motorist in hitting**

    In a wrongful death action arising from an automobile accident, evidence was insufficient to show that defendant was negligent with respect to speed, lookout, failing to turn to avoid striking deceased, failing to keep his vehicle under control, failing to sound his horn, or failing to apply his brakes where the evidence tended to show that defendant was travelling 50 mph in a 55 mph speed zone on a level, straight, dry road in the nighttime and there were no circumstances existing requiring defendant to reduce his speed; defendant was driving with his lights on dim, but G.S. 20-131(d) did not require that deceased, who was sleeping on the highway, be rendered clearly discernible as a human being from 75 feet away; absent evidence that defendant knew or should have known that the object on the road in front of him was a person, defendant had no duty to sound his horn, stop, or turn to the left or right; since defendant travelled the 50 to 75 feet from the point he first observed the object in no more than 1½ seconds, his failure to sound his horn, slam on brakes or turn to one side was not evidence of negligence; and there was no evidence that defendant's ability to keep a proper lookout was affected by his consumption of beer four hours earlier or by the presence of two females in the car with him.

2. **Automobiles §§ 83, 89.4— deceased asleep on highway—contributory negligence—no last clear chance**

    In a wrongful death action arising from an automobile accident, evidence established plaintiff's contributory negligence as a matter of law and failed to establish the elements of last clear chance as a matter of law where the evidence tended to show that deceased was sleeping in defendant's lane of travel; defendant first saw deceased when he was 50 or 75 feet from him, but did not recognize deceased as a person; and defendant, who was travelling at 50 mph, did not have time to avoid striking deceased.

APPEAL by plaintiff from *Smith (Donald L.), Judge*. Judgment entered 2 May 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 29 March 1979.

This is an action for wrongful death. Plaintiff appeals from the entry of directed verdict for defendant at the close of plaintiff's evidence. We find no error.

Plaintiff's evidence showed that on 30 September 1972 defendant, Donald Sumrell, closed the store where he worked about 9:00 p.m., drove to Kinston and picked up a girl that he had been dating. They went to a lounge where they stayed for an hour or so and during that time the defendant consumed some quantity of beer. About 11:00 p.m. they left the lounge and went to a pig-pickin', where defendant drank one or two beers. During the entire evening he did not drink more than four beers, and he ate at the pig-pickin'. About 4:00 a.m., 1 October 1972, he with his girlfriend and another girl left the pig-pickin' riding in his Corvette automobile which had two bucket seats. The defendant was in one seat and both girls were in the other. Defendant was driving on N.C. Highway 11 which had two northbound lanes, a median, and two southbound lanes with a paved emergency strip about six feet wide adjoining the west margin of the southbound lanes. A grassy shoulder some nine feet wide adjoined the emergency strip. It was stipulated that the posted speed limit in the area was 55 m.p.h.

The defendant was travelling south in the right, outside lane as he approached the area where the impact occurred. Defendant, going about 50 m.p.h., had gone through a right-hand curve about one-fourth mile before reaching the impact area. After leaving the curve, the road was level and straight. Immediately before the collision defendant met a car travelling north and defendant's lights were on dim. No one was travelling on the inside lane to defendant's left, but a car was following approximately 300 or 400 feet behind him and he was not concerned about it. The weather was clear with no rain or fog.

Meanwhile, in the early morning hours of 30 September 1972, plaintiff's intestate, Sammy Mercurio, with his brother Anthony left Cranston, Rhode Island, hitchhiking to Camp LeJeune, North Carolina, to visit their brother who was stationed there in the Marine Corps. Anthony was fifteen years old at the time and carrying a gym bag while Sammy was carrying a fifty or sixty pound backpack. Around midnight of 30 September 1972 they had reached Wilson, North Carolina, where a car let them off on N.C.

about six or seven miles north of Kinston. Sammy was tired because he had been carrying the backpack all day and had been without sleep for almost twenty hours. He took off the backpack, placed it on the emergency lane, and lay down. Anthony stood for a while watching the traffic, and then he, too, lay down to rest on the emergency lane, with Sammy being closer to the road. Anthony did not intend to go to sleep, but did.

About this time defendant saw what appeared to him to be a big black-looking box when he was 50 or 75 feet from it. He took his foot off the accelerator, put it on the brake pedal but did not slam on the brakes or turn to the left or right, blow the horn or blink his lights. He went straight ahead and hit the object. Defendant did not attempt to stop his car immediately but brought it to a gradual stop about 397 feet from the place of impact. Sammy's body was dragged beneath the car for about 155 feet. Defendant did not realize he had hit a person until after he had stopped the car and someone told him.

Anthony was awakened by the noise, looked, and his brother was not there. He then looked up the road, saw clothes and articles scattered all over the road and the Corvette parked off the road. Anthony had been asleep when his brother was struck by defendant's car and did not know what had happened until it was over. Afterwards, he saw his brother's body in the center of the right-hand lane. It was stipulated that Sammy Mercurio was instantly killed when struck by the automobile operated by defendant.

Plaintiff also produced evidence as to damages.

*Johnson, Gamble & Shearon, by Samuel H. Johnson, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Robert W. Kaylor and I. Edward Johnson, for defendant appellee.*

MARTIN (Harry C.), Judge.

Plaintiff assigns as error the dismissal of the case at the close of his evidence. The appeal raises three questions for review: negligence of defendant Sumrell, contributory negligence of plaintiff's intestate and the doctrine of last clear chance. As to each of these principles of law, the evidence must be viewed in

the light most favorable to the plaintiff. *Homes, Inc. v. Bryson*, 273 N.C. 84, 159 S.E. 2d 329 (1968).

The trial court based its decision to dismiss the case on *Battle v. Chavis*, 266 N.C. 778, 147 S.E. 2d 387 (1966), and *Barnes v. Horney*, 247 N.C. 495, 101 S.E. 2d 315 (1958). These cases are primarily concerned with the last clear chance doctrine. We discuss all three of the issues raised by the appeal.

[1] Plaintiff alleges defendant was negligent with respect to speed, lookout, failing to turn to avoid striking Sammy, failing to keep his vehicle under control, failing to sound his horn and failing to apply his brakes. The evidence indicates defendant was travelling 50 m.p.h. in a 55 m.p.h. speed zone on a level, straight, dry road in the nighttime; he did not sound his horn; he continued to drive straight ahead and did not turn to the left or right; when defendant saw the object in front of him, he took his foot off the accelerator, placed it on the brake pedal but did not slam on the brakes; defendant was driving with his lights on dim and saw the object when it was 50 to 75 feet in front of him.

A careful review of the record fails to disclose evidence to support a finding that defendant was operating his car in excess of the posted speed limit or at an excessive speed under the circumstances then existing. N.C. Gen. Stat. 20-141(a). The weather was clear and the road straight, level and dry. There were no skid marks or tire marks on the highway. No special hazard existed because of road conditions, traffic, or otherwise. There were no circumstances existing requiring defendant to reduce his speed. *Hoke v. Greyhound Corp.*, 226 N.C. 692, 40 S.E. 2d 345 (1946).

Plaintiff's other contentions of negligence by defendant may be considered together. In the operation of his car, defendant had a duty to keep a reasonable and proper lookout under the circumstances existing for other persons on the highway; to keep his car under reasonable and proper control and to take such actions as a reasonably prudent person would take under the same circumstances to avoid colliding with persons on the highway.

One is not negligent as a matter of law in operating a motor vehicle on the public highway with its lights on dim. Upon meeting another vehicle, the headlights shall be dimmed to prevent the projection of a dazzling or glaring light to persons within a

distance of 500 feet of such headlights. N.C. Gen. Stat. 20-131(a). Lights on dim must be capable of rendering clearly discernible, under normal atmospheric conditions, a person 75 feet ahead on a level road. N.C. Gen. Stat. 20-131(d). In meeting the northbound car immediately before the collision, defendant was required to dim his headlights. The statute does not state the position or posture of the "person" to which it refers. As the law does not require a motorist to anticipate that a person may be lying or sleeping on the travelled portion of the highway, *Barnes v. Horney, supra,* we hold the statute does not require that persons lying or sleeping on the highway be rendered clearly discernible as human beings by motor vehicle headlights. The evidence indicates defendant saw an object on the highway when it was 50 to 75 feet away. He did not realize it was a person lying on the road. Absent evidence that defendant knew, or should have known, the object on the highway was a person, defendant had no duty to sound his horn, stop or turn to the left or right. Defendant thought the object was a box and, after striking it, did not attempt to stop his car immediately, but brought it to a gradual stop. The duty of a motorist at night to exercise ordinary care does not require that he must be able to bring his car to an immediate stop upon the sudden arising of a dangerous situation which he could not have reasonably anticipated. *Rouse v. Peterson,* 261 N.C. 600, 135 S.E. 2d 549 (1964).

A motorist is required to keep a reasonable and proper lookout in the operation of his motor vehicle. He has a duty not only to look, but to see what is there to be seen. He must keep such an outlook in the direction of travel as a reasonably prudent person would keep under the same or similar circumstances. *Sugg v. Baker,* 261 N.C. 579, 135 S.E. 2d 565 (1964); *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330 (1942).

There was no evidence that defendant's ability to keep a proper outlook was affected by his consumption of beer. The accident occurred almost four and one-half hours after he drank any beer and some two hours after he had eaten. The state highway trooper, trained in detecting persons under the influence of alcohol, testified he did not detect any odor of alcohol about defendant and that there was nothing unusual about defendant's activities, other than he was emotionally upset. Defendant's personal appearance was normal.

Although there were two females in the car with defendant, the record does not disclose he was distracted by them, by looking at them or in talking with them. Defendant's girlfriend, seated in the middle, was asleep at the time. Defendant had met a northbound car immediately before the collision. Defendant's headlights were on dim, but it is not clear from the record that they were dimmed because of the oncoming northbound car. Defendant would have had a duty to dim his headlights, if they were not already on dim. N.C. Gen. Stat. 20-131(a). He saw the object on the road when about 50 to 75 feet from it. We take judicial notice that a car operated at a speed of 50 m.p.h. is moving at approximately 73.3 feet per second. Defendant traveled the 50 to 75 feet to the object in no more than one to one and a half seconds. Under these circumstances, defendant's failure to sound his horn, slam on brakes, or turn to one side is not evidence of negligence. *See Williamson v. McNeill*, 8 N.C. App. 625, 175 S.E. 2d 294, *aff'd*, 277 N.C. 447, 177 S.E. 2d 859 (1970).

> The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted.

*Osborne v. Coal Co.*, 207 N.C. 545, 546, 177 S.E. 796, 796-97 (1935). Foreseeability does not require omniscience.

[2] Plaintiff's evidence is not sufficient to submit the issue of defendant's negligence to the jury. Assuming, *arguendo*, that plaintiff's evidence made out a case of actionable negligence, we are of the opinion that such evidence also established plaintiff's contributory negligence as a matter of law and failed to establish the elements of last clear chance as a matter of law. Defendant was travelling in the right lane for southbound traffic. There is no evidence he left that lane before hitting plaintiff's intestate. Defendant did not drive on the emergency lane before striking Sammy. The only permissible inference from the evidence is that Sammy was in the right lane of the travelled portion of the highway.

We hold the case is within the principles set out in *Barnes* and *Williamson*. In *Barnes*, plaintiff was asleep in the travelled portion of the highway at 8:30 p.m. on the Fourth of July. Defendant, driving with headlights on dim, saw plaintiff when about five or six feet away. He did not recognize plaintiff as a person but thought he was a box. Justice Higgins, speaking for the Court, stated:

> Negligence is not presumed from the mere fact an accident has occurred. [Citations omitted.] However, the very fact the plaintiff, without sleep for two days and nights, attempted to make his bed in the middle or on the side of a crooked, shaded, dirt road, shows negligence as a matter of law. *Holderfield v. Trucking Co.*, 232 N.C. 623, 61 S.E. 2d 904. A driver of an automobile may anticipate that other travelers will be using the highway and he should be on the lookout for them. However, it would seem to be too much to require him to anticipate the highway would be used as sleeping quarters. Of course, a pedestrian has the right to use the highway, but a pedestrian is a foot traveler, and the right to walk does not carry with it the right to lie down and go to sleep. One who voluntarily places himself in a position of known peril fails to exercise ordinary care for his own safety. [Citation omitted.]

*Barnes v. Horney, supra* at 498, 101 S.E. 2d at 317.

By voluntarily placing himself on the highway, Sammy failed to exercise for his own safety the care of an ordinary prudent person and his negligence was a proximate cause of his unnecessary death. *Starnes v. McManus*, 263 N.C. 638, 140 S.E. 2d 15 (1965); *Barnes v. Horney, supra*. " 'A plaintiff will not be permitted to recover for injuries resulting from a hazard he helped create.' " *Blevins v. France*, 244 N.C. 334, 343, 93 S.E. 2d 549, 556 (1956).

Plaintiff relies upon the discovered peril or last clear chance doctrine. The law in North Carolina in this respect is reviewed and analyzed by Justice Lake in *Exum v. Boyles*, 272 N.C. 567, 158 S.E. 2d 845 (1968). A defendant who does not actually know of plaintiff's perilous situation may still be liable under this theory if, but only if, the defendant owed a duty to plaintiff to maintain a lookout and would have discovered plaintiff's perilous position had such a lookout been maintained. Thus, plaintiff must show

that defendant owed plaintiff a duty to keep a reasonable and proper lookout in the direction of travel, and also, that if defendant had fulfilled that duty, he would have discovered plaintiff's helpless peril in time to avoid injuring him by then exercising reasonable care. Although defendant had no duty to anticipate, or foresee, that plaintiff's intestate would be lying on the highway asleep, he did have a duty to maintain a reasonable lookout in the direction of travel. *Black v. Milling Co.*, 257 N.C. 730, 127 S.E. 2d 515 (1962); *Smith v. Rawlins*, 253 N.C. 67, 116 S.E. 2d 184, 85 A.L.R. 2d 609 (1960). There is no evidence that defendant failed to keep a reasonable lookout in the direction of travel or that he should have seen Sammy lying on the road before he was within 50 to 75 feet from him. There is no evidence that a person exercising a proper lookout would have been able in the exercise of reasonable care to avoid the collision. *Williamson v. McNeill, supra.* In order for the last clear chance doctrine to apply, there must be evidence that a reasonable person under the conditions existing had the time and means to avoid injury to the imperiled person by the exercise of reasonable care after he discovered, or should have discovered, the perilous situation. *Battle v. Chavis, supra.* The doctrine contemplates the last "clear" chance, not the last "possible" chance to avoid injury; it must be such a chance as would enable a reasonably prudent man in a like situation to act effectively. *Aydlett v. Keim*, 232 N.C. 367,. 61 S.E. 2d 109 (1950).

As noted above, at a speed of 73.3 feet per second, defendant did not have time to avoid striking plaintiff's intestate. Defendant was only 75 feet at most from Sammy when defendant first saw him as a "box." The case is distinguishable from *Wade v. Sausage Co.*, 239 N.C. 524, 80 S.E. 2d 150 (1954), where plaintiff was plainly visible to defendant at a distance of 225 feet, creating a jury question concerning last clear chance. Likewise, in *Exum, supra*, plaintiff was clearly visible to defendant 600 feet away and plaintiff was beside a lighted parked car which served as a warning to defendant that some person might be about the car. As Justice Lake stated, "[T]he doctrine of the last clear chance is not a single rule, but is a series of different rules applicable to differing factual situations." *Exum v. Boyles, supra* at 575, 158 S.E. 2d at 852.

The death of Sammy is indeed regrettable, another in the long line of unnecessary highway statistics. However, negligence

is not presumed from the mere happening of an event. In the dismissal of plaintiff's case, we find

No error.

Judges PARKER and ERWIN concur.