JAMES O. WRAY v. KENNETH HUGHES

No. 7818SC1031

(Filed 5 February 1980)

1. Automobiles § 86— last clear chance—showing required

   In order for an issue of last clear chance to be submitted to the jury, the evidence must tend to show: (1) that plaintiff, by his own negligence, placed himself in a position of peril (or a position of peril to which he was inadvertent); (2) that defendant saw, or by the exercise of reasonable care should have seen, and understood the perilous position of plaintiff; (3) that he should have so seen or discovered plaintiff's perilous condition in time to have avoided injuring him; (4) that notwithstanding such notice defendant failed or refused to use every reasonable means at his command to avoid the impending injury; and (5) that as a result of such failure or refusal plaintiff was in fact injured.

2. Automobiles § 89.1— last clear chance—sufficiency of evidence

   The trial court erred in failing to submit an issue of last clear chance to the jury in this action to recover damages arising out of a collision between plaintiff's tractor and defendant's automobile where there was evidence tending to show that both plaintiff and defendant were proceeding south on a two-lane road; in preparing to turn left into a driveway, plaintiff slowed his tractor to a stop and looked backwards for a distance of 640 feet at which point defendant's vehicle was not yet in view; after three seconds plaintiff had traveled six to eight feet and had reached a point three feet beyond the center line into the northbound lane; at that moment, plaintiff heard a horn blow and glanced back to find defendant traveling approximately 80 mph in the northbound lane at a distance of 250 feet; after a second elapsed plaintiff heard tires screeching, and after another second defendant collided with the left rear portion of the tractor; defendant first saw plaintiff ahead of him at a distance of over 600 feet; defendant pulled out into the northbound lane to pass plaintiff while he was some distance from plaintiff and did not communicate his inten-

tion to pass until he was 250 feet from plaintiff; and defendant left 110 feet of skid marks from his attempt to stop.

APPEAL by plaintiff from *Crissman, Judge.* Judgment entered 16 March 1978 in Superior Court, GUILFORD County. Cross-appeal by defendant. Heard in the Court of Appeals 22 August 1979.

Plaintiff instituted this action to recover for property damage and personal injuries sustained in a collision between his tractor and defendant's automobile, allegedly caused by the negligence of defendant. Defendant answered, denying negligence, pleading the contributory negligence of plaintiff in bar of plaintiff's claim, and counterclaiming for damage to his automobile resulting from the collision. Plaintiff replied, averring that defendant had the last clear chance to avoid the collision.

Plaintiff's tractor was struck in the left rear area by defendant's vehicle when defendant was attempting to overtake and pass plaintiff's tractor. On 9 May 1975, at approximately 9:00 a.m., both plaintiff and defendant were proceeding south on rural paved road 1001, North Church Street Extension, in Guilford County, North Carolina, where the posted speed limit was 55 miles per hour. The road was a two-lane road, with northbound and southbound traffic meeting. The shoulders were three feet in width and sloped downward into a drainage ditch on either side of the road. The collision occurred on a level portion of the road below a hillcrest to the north. The distance between the area of collision and the hillcrest was measured by an investigating officer to be approximately 637 feet, with clear visibility for the entire distance. In the area of the collision, three private driveways entered the road from the east shoulder of the road, each constructed over the drainage ditch. The collision occurred in front of the middle driveway, the actual impact occurring in the northbound lane of the road.

Evidence presented by plaintiff tended to show the following: Plaintiff was travelling south about five or six miles per hour just before he proceeded to turn left into the middle driveway. The right two tires of the tractor were at the edge of the road. At the middle driveway, plaintiff "clutched" the tractor to a stop. He was sitting sideways in the tractor seat, "angling" toward his left.

Plaintiff looked back up the hill for a distance of approximately 640 feet to its crest, and upon seeing no traffic coming in either direction, began his turn. About three seconds thereafter, he heard a car horn blow and glanced back to the north to see the defendant about 250 feet behind him in the northbound lane. At the time he heard defendant's horn, plaintiff had travelled approximately six feet across the highway to his left. About a second later, plaintiff heard defendant's tires skidding. Although plaintiff attempted to cut the tractor back to the right, defendant continued to skid and collided with plaintiff. Plaintiff testified that in his opinion defendant was travelling about 80 miles per hour when he first saw defendant at 250 feet away, and about 55 or 60 miles per hour at the point of impact.

Defendant's evidence tended to show the following:

Defendant was travelling south on North Church Street Extension at the time of the collision. As defendant crested the hill north of the point where the collision occurred, he observed plaintiff's tractor proceeding south about 640 feet ahead of him along the right shoulder of the road, obviously travelling at a lower rate of speed. At about 300 feet from the point of impact, defendant sounded his horn to alert plaintiff, and proceeded to go around the tractor as it continued down the shoulder of the road. When defendant sounded his horn, plaintiff looked back acknowledging defendant's presence, and defendant proceeded under that assumption. Defendant was approximately 170 feet behind plaintiff, attempting to go around him, when plaintiff turned left into his path. Defendant braked and sounded his horn, but at that point the collision was unavoidable, and defendant skidded approximately 110 feet and collided with plaintiff. Defendant testified that at no time did plaintiff signal his intention to turn left across the road, and that immediately before plaintiff turned left, defendant was travelling at approximately 55 miles an hour.

The jury found both plaintiff and defendant negligent, thereby denying recovery. The trial court refused to instruct the jury on the doctrine of last clear chance.

From the judgment entered in accordance therewith, plaintiff appeals. Defendant also brings forward certain cross assignments of error.

*Max D. Ballinger for plaintiff appellant.*

*Perry C. Henson and Perry C. Henson, Jr., for defendant appellee.*

MORRIS, Chief Judge.

Plaintiff assigns as error various rulings by the trial court as to the sufficiency of the evidence on the issues of plaintiff's contributory negligence, defendant's negligence, and as to certain instructions to the jury. In particular, plaintiff argues that the court erred in failing to charge the jury on the doctrine of last clear chance. Upon a careful review of the evidence presented, we conclude that there was evidence which would have supported a charge on the issue of last clear chance. Plaintiff is, therefore, entitled to a new trial.

Recently, our Supreme Court explained the duty of a trial judge to submit an issue to the jury for consideration:

> When charging the jury in a civil case it is the duty of the trial court to explain the law and to apply it to the evidence on the substantial issues of the action. G.S. 1A-1, Rule 51: *Superior Foods, Inc. v. Harris-Teeter Super Markets, Inc.,* 288 N.C. 213, 217 S.E. 2d 566 (1975); *Investment Properties of Asheville, Inc. v. Norburn,* 281 N.C. 191, 188 S.E. 2d 342 (1972). If a party contends that certain acts or omissions constitute a claim for relief or a defense against another, the trial court must submit the issue with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the claim or defense asserted. *See, Vernon v. Crist,* 291 N.C. 646, 231 S.E. 2d 591 (1977); *Atkins v. Moye,* 277 N.C. 179, 176 S.E. 2d 789 (1970).

*Cockrell v. Cromartie Transport Co.,* 295 N.C. 444, 449, 245 S.E. 2d 497, 500 (1978).

[1] It is well established that in order to submit the issue of last clear chance to the jury, the evidence must tend to show the following elements: (1) that plaintiff, by his own negligence, placed himself in a position of peril (or a position of peril to which he was inadvertent); (2) that defendant saw, or by the exercise of reasonable care should have seen, and understood the perilous

position of plaintiff; (3) that he should have so seen or discovered plaintiff's perilous condition in time to have avoided injuring him; (4) that notwithstanding such notice defendant failed or refused to use every reasonable means at his command to avoid the impending injury; and (5) that as a result of such failure or refusal plaintiff was in fact injured. *Cockrell v. Cromartie Transport Co., supra; Vernon v. Crist,* 291 N.C. 646, 231 S.E. 2d 591 (1977); *Exum v. Boyles,* 272 N.C. 567, 158 S.E. 2d 845 (1968); *Bell v. Wallace,* 32 N.C. App. 370, 232 S.E. 2d 305, *cert. denied,* 292 N.C. 466, 233 S.E. 2d 921 (1977). Although it is a humane rule of law imposing liability on the one who can last avoid an injury, "[u]nless all the necessary elements of the doctrine of last clear chance are present in order to bring the doctrine into play, the case is governed by the ordinary rules of negligence and contributory negligence." *Clodfelter v. Carroll,* 261 N.C. 630, 634, 135 S.E. 2d 636, 638 (1964).

Whether the evidence is sufficient to require submission of the case to the jury on the last clear chance doctrine depends on the facts of the individual case. In many cases our courts have applied the last clear chance doctrine. For example, in *Cockrell v. Transport Co., supra,* plaintiff's intestate was proceeding north on U.S. Highway 421 in Sampson County, a two-lane paved road, when she attempted to turn left across the southbound lane. As she commenced her turn, intestate's car stalled and the left front end of the car crossed the yellow line into the southbound lane. While intestate attempted to restart the car, defendant driver approached from the north and shortly thereafter collided with the deceased. Plaintiff's evidence showed that the truck driven by defendant did not swerve or deviate from a direct line of travel from the time he first observed it until he struck intestate's car. Plaintiff's evidence also indicated that defendant was or should have been aware of the deceased's perilous position from a distance of at least 395 feet away. The Court concluded on these facts that there was sufficient evidence upon which a jury could find that defendant discovered or should have discovered plaintiff's helpless peril and thereafter, having the means and the time to avoid the injury, negligently failed to do so. *See Exum v. Boyles, supra.*

Similarly, in our recent decision of *Honeycutt v. Bess,* 43 N.C. App. 684, 259 S.E. 2d 798 (1979), there was evidence presented

upon which a jury could find that defendant had the last clear chance to avoid plaintiff's injury. In that case, plaintiff was travelling north on Old Charlotte Road where it approaches Highway 49 in Cabarrus County, and after approaching the intersection, stopped at the stop sign. Plaintiff testified that he looked for oncoming traffic and saw defendant's truck approaching him about 1500 feet east of the intersection. As he started to cross the highway, plaintiff's car stalled and cut off, but continued to roll across the road until it was completely blocking the westbound lane of the highway. Plaintiff attempted to restart his truck, but before he could do so, defendant collided with him. A witness stated that defendant's vehicle was approximately 900 yards away when plaintiff stopped in the highway and was travelling approximately 60 miles per hour at the time. Plaintiff was stopped in the highway for 8 to 10 seconds before the collision occurred. Further evidence indicated that there was no traffic coming toward defendant in the other lane. This Court held that upon such evidence the jury could have found that defendant could or should have avoided the collision by stopping or driving around the car, but failed to do so.

[2] In the present case, the evidence indicates, when viewed in the light most favorable to plaintiff, that defendant first saw plaintiff ahead of him at a distance of more than 600 feet; that defendant attempted to pass plaintiff and pulled out into the northbound lane while he was still some distance from plaintiff; that defendant did not communicate his intention to pass plaintiff until he was 250 feet away from plaintiff; that plaintiff slowed his tractor to a stop and, after observing no traffic in either direction, proceeded to turn left into a driveway on the east side of the highway; that after three seconds, within which time plaintiff had travelled approximately six to eight feet to his left, plaintiff reached a point about three feet beyond the center line into the northbound lane of travel; that at that moment plaintiff heard a horn blow and glanced back to find defendant travelling approximately 80 miles per hour in the northbound lane at a distance of approximately 250 feet; that after a second had elapsed plaintiff heard tires screeching; that after another second defendant collided with plaintiff, making contact on the left rear portion of the tractor; and that defendant left around 110 feet of skidmarks from his attempt to stop. Viewing the evidence favorably to plaintiff, it is apparent that since defendant was at a distance of 250 feet

from plaintiff when he sounded his horn and began braking, defendant must have been at a greater distance when plaintiff began his turn three seconds earlier. Further, plaintiff testified that at the time he began his turn, plaintiff looked backwards for a distance of 640 feet at which point defendant's vehicle was not yet in view. Taken as true, this indicates that defendant was at a distance of at least 640 feet away when plaintiff began his turn. Thus, the evidence is supportive of the inference that defendant had or should have had knowledge of plaintiff's attempt to turn left across the northbound lane at a point in time and distance up to 640 feet, wherein he could have avoided the accident by use of reasonable means available to him. We consider this question one for the jury, upon proper instructions, to determine.

We are, of course, cognizant that the last clear chance doctrine contemplates a last "clear" chance to avoid injury. *See, e.g., Battle v. Chavis,* 266 N.C. 778, 147 S.E. 2d 387 (1966); *Artis v. Wolfe,* 31 N.C. App. 227, 228 S.E. 2d 781, *cert. denied,* 291 N.C. 448, 230 S.E. 2d 765 (1976); *Grant v. Greene,* 11 N.C. App. 537, 181 S.E. 2d 770 (1971). In *Grant v. Greene,* for example, plaintiff's evidence showed that plaintiff and her intestate, who was legally blind, were standing on the side of a highway at night when intestate suddenly ran into the highway in front of defendant. Upon seeing plaintiff's intestate enter the highway, defendant switched his lights from low to bright, immediately applied his brakes, and attempted to swerve out of the way of intestate. Evidence indicated that there was clear visibility between defendant and intestate of approximately 200 feet at the time intestate entered the highway. This Court held the evidence insufficient to submit the issue of last clear chance to the jury:

> [D]efendant's duty to act arose only after he knew or in the exercise of due care should have known that the plaintiff's intestate was insensitive to danger. *Wise v. Tarte,* 263 N.C. 237, 139 S.E. 2d 195 (1964). The doctrine contemplates that if liability is to be imposed the defendant must have a last "clear" chance, not a last "possible" chance to avoid injury.

11 N.C. App. at 540-41, 181 S.E. 2d at 772. Indeed, where there is no evidence that defendant failed to keep a reasonable lookout in the direction of travel or that a person exercising a proper lookout would have been able in the exercise of reasonable care

to avoid the collision, the last clear chance doctrine does not apply. *Billings v. Billings Trucking Corp.*, 44 N.C. App. 180, 260 S.E. 2d 671 (1979); *Sink v. Sumrell*, 41 N.C. App. 242, 254 S.E. 2d 665 (1979). However, this case suggests facts from which a jury could infer that defendant saw or should have seen plaintiff's attempt to turn left from a distance within which he could have avoided the collision. This ability to avoid collision is such that would "enable a reasonably prudent man in a like situation to act effectively." *Sink v. Sumrell*, 41 N.C. App. at 249, 254 S.E. 2d at 670.

Because the questions presented by plaintiff's other assignments and those presented by defendant on cross-appeal may not arise upon retrial, we do not discuss them.

Reversed and remanded for a new trial.

Judges PARKER and MARTIN (Harry C.) concur.